IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KARLA D. SPARROW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-0253-N |
| | § | |
| BAYLOR HEALTH CARE SYSTEM, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Baylor Healthcare System's ("Baylor") motion for summary judgment [11]. For the reasons that follow, the Court grants the motion.

### I. SPARROW'S EMPLOYMENT DISPUTE

Plaintiff Karla Sparrow worked for Baylor as a Peace Officer from 1996 until August 4, 2011. Starting some time in 2008, Sparrow began to suffer from back pain. She was diagnosed with a ruptured disc, and as a result, Sparrow underwent treatment and surgery. Sparrow re-injured herself twice after the surgery, first in April 2009 and second in April 2011. Both re-injuries prohibited Sparrow from lifting more than 20 pounds on the job. After the April 2011 injury, Sparrow's doctors prescribed pain medication.

In July 2011, Sparrow was randomly selected for a drug test. Before taking the drug test, Sparrow apparently informed the test administrators – Quest Diagnostics – to expect a positive result due to her medications. Sparrow did test positive on that test. On July 8, 2011, Baylor's Medical Review Office (the "MRO") called Sparrow and advised her to

obtain supporting documentation for her prescriptions from her physician. Sparrow apparently contacted her doctor, Dr. Clayton, who "wrote a letter regarding Sparrow's prescriptions." *See* Sparrow Aff., *in* App. Supp. Pl.'s Resp. Def.'s Mot. Summ. J. 67. Sparrow faxed this letter to the MRO.[1]

On August 2, 2011, the MRO called Sparrow again, stating that it had not yet received Dr. Clayton's medical records and there were still issues with Sparrow's drug test. The office informed her that she needed to send the necessary documentation before 5:00 P.M. or the office would report her positive test. Sparrow failed to meet this deadline and the medical review office reported the positive test. On August 3, 2011, David Carpenter, the Chief of Police of the Baylor Department of Public Safety, fired Sparrow for violating Baylor's substance abuse policy. Two days later, on August 5, Baylor filed an F-5 Report, as required by Texas law, and indicated that Sparrow's termination was a "general discharge." Such a classification, in effect, stated that Sparrow was terminated for either performance-related reasons or a disciplinary action not involving allegations of criminal misconduct, insubordination, or untruthfulness. Ex. E-1, *in* App. Supp. Def.'s Mot. Summ. J. 63. Such a designation apparently makes its more difficult for a peace officer to find new employment because the future employer thinks that the applicant has done something wrong.

Shortly afterward, the drug test administrator apparently received Sparrow's updated documents and on August 9, 2011, switched Sparrow's test result to negative. Sparrow then

---

[1] Neither party provided the Court with a copy of the letter.

petitioned Carpenter to correct the F-5 form. Carpenter initially denied this request, and the parties scheduled an administrative hearing on the matter. Before the hearing took place, Baylor amended the F-5 form.

Sparrow filed suit, alleging disability discrimination under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and defamation. Baylor moves for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Courts, however, need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, courts resolve factual controversies in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. BAYLOR IS ENTITLED TO SUMMARY JUDGMENT ON SPARROW'S ADA CLAIM

The ADA prohibits discrimination in employment "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Sparrow bears the initial burden of establishing a prima facie case of discrimination. Once accomplished, the burden to produce – but not persuade – shifts to Baylor, which must provide a nondiscriminatory, nonretaliatory explanation for its actions. The burden then shifts back to Sparrow to raise a fact issue regarding whether the Baylor's stated reasons for dismissal are pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) and *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)); *Diagle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)

To establish a prima facie case of discrimination, Sparrow must establish that (1) she is disabled or regarded as disabled; (2) she is qualified for the job; (3) she was subject to an adverse employment action on account of her disability; and (4) she was replaced by or treated less favorably than nondisabled employees. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). The nondisabled employees must be similarly situated.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). "Employees with different supervisors, who work for different divisions or companies or who were the subject of adverse employment actions too remote in time for that taken against the plaintiff" are usually not similarly situated. *Id.* The Court holds that Sparrow failed to establish a prima facie case.

Sparrow fails to show that she was replaced by or was treated less favorably than non-disabled employees. First, the parties do not dispute that Sparrow's position was not filled. Thus, she could not have been "replaced by" a non-disabled employee. Further, the only evidence less favorable treatment concerns employees who were not similarly situated.

Sparrow points to two different nondisabled employees who were treated differently than she was. First, Sparrow offers evidence that a Baylor Medical Center nurse who failed a drug test (and was suspected of stealing drugs) was not fired. But this employee was not similarly situated for at least three reasons. First, the incident is too remote – occurring approximately 13 years before Sparrow's termination. *See Turay v. Harris Cnty., Tex.*, No. H-09-0193, 2011 WL 841510, at *7 (S.D. Tex. Feb. 17, 2011) (holding that employee was not similarly situated when stated employment action occurred a decade prior to plaintiff's). Second, the nurse presumably had different supervisors and different work responsibilities than Sparrow, who was a Peace Officer. Finally, the nurse worked an entirely different job than Sparrow. This occupational distinction is especially important because Baylor crafted different employment policies for employees who carried firearms. *See* Ex. B-1, *in* App.

Supp. Def.'s Mot. Summ. J. 44. These would not apply to the nurse. Based on these reasons, the nurse is not similarly situated to Sparrow.

Sparrow also offers evidence that Baylor hired a new employee even after the prospective employee had failed a drug test. But this employee is also not similarly situated. First, the employee was prospective employee, not an actual employee. Further, Sparrow offers no evidence of the job that this employee was eventually hired to do or who made the final decision to hire that employee. Finally, the timing of the employee's drug test is different. For the employee who was eventually hired, the drug test result change from positive to negative took place before Baylor took any action. In Sparrow's case, Baylor acted on information known at the time – a positive test – when terminating Sparrow. The test was not changed to negative until Baylor had already acted.

These are the only two employees whom Sparrow alleges were similarly situated and treated more favorably. Because neither of these employees are situated similarly to Sparrow, Sparrow has failed to show a prima facie case of disability discrimination. Thus, Baylor is entitled to summary judgment on Sparrow's disability discrimination claim.

### III. BAYLOR IS ENTITLED TO SUMMARY JUDGMENT ON SPARROW'S DEFAMATION CLAIM

Sparrow also brings defamation claims. On these claims, Sparrow is required to prove that (1) Baylor published a statement of fact; (2) the statement referred to Sparrow; (3) the statement was defamatory; and (4) Baylor acted negligently regarding the truth of the statement. *Brown v. Swett & Crawford of Tex. Inc.*, 178 S.W.3d 382 (Tex. App. – Houston [1st Dist.] 2005, no pet.). Statements that are "substantially true" are not defamatory.

*Cranberg v. Consumers Union of United States, Inc.*, 756 F.2d 382, 388 (5th Cir. 1985). The test for substantial truth is "whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been." *McIllvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990).

Sparrow's defamation claims hinge on two separate statements. First, Sparrow alleges that Assistant Chief Jesse Gomez, told other Baylor officers that she "failed a drug test" and that she "had a drug issue." Second, Sparrow alleges that Baylor, through its chief of police David Carpenter, defamed her by filling out an F-5 form that characterized her termination as a "general discharge" rather than an "honorable discharge." Baylor's no-evidence motion argues that Sparrow cannot show any evidence that the statements were defamatory. The Court agrees.

***1. Sparrow Offers No Evidence That Baylor Informed Others That She "Had a Drug Problem."*** – The only evidence that Sparrow offers to show that anyone at Baylor said that Sparrow "had a drug problem" is Sparrow's own affidavit. In that affidavit, Sparrow states that "[o]n August 4, 2011, . . . Gomez told three Baylor Department of Public Safety investigators that I was terminated because I failed a drug test and that I had a drug problem." Sparrow Affidavit, *in* App. Supp. Pl.'s Resp. Def.'s Mot. Summ. J. 68.

Baylor objects that this affidavit is not based on personal knowledge or is otherwise based on impermissible hearsay. Sparrow failed to respond to these objections. The Court sustains Baylor's objections based on two separate rationales.

First, Sparrow does not establish that she has personal knowledge that Gomez made the statements to the officer because she was not present when the statement were made. *See Poitevint v. United Recovery Systems*, No. 1:11-CV–0076-MP-GRJ, 2012 WL 4458289, at *3 (N.D. Fla. Sept. 26, 2012) (holding that declarant lacked personal knowledge in affidavit stating that party opponent called his sister and sister-in-law multiple times).

Second, even if Sparrow established personal knowledge that she was told by the officers, her statement is still impermissible hearsay for the purpose for which Sparrow deploys it.[2] *See* FED. R. EVID. 801; 802. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Here, the matter asserted is that Gomez told Flowers and Caughron that Sparrow had a "drug issue" or a "drug problem." Sparrow's testimony, if based on personal knowledge, essentially states that Flowers and Caughron said that Gomez said that Sparrow had a drug issue or drug problem. What Flowers and Caughron told Sparrow – the specifics of Gomez's statement – is an out-of-court statement. Thus, Sparrow's testimony is hearsay and, to be admissible, some hearsay exemption or exception must apply.

Sparrow does not point to any hearsay rule to defend her affidavit because she did not respond to Baylor's objection. And based upon the Court's own review, no exemption or exception applies. The most likely exception – admission by a party opponent – does not

---

[2]Although Sparrow's affidavit does not establish her personal knowledge, her deposition does. In portions of her deposition, cited by Baylor in its original motion, she states that she was told by Flowers and Caughron, two of the three officers to whom Gomez made the statement, that Gomez had said she had a "drug problem." Sparrow Dep. 79:15-18, *in* App. Supp. Def.'s Mot. Summ. J. 24

apply because Officer Flowers and Officer Caughron's alleged statements to Sparrow were not within the scope of the Officers' employment when each stated to Sparrow what Gomez said. *See* FED. R. EVID. 801(2)(D) (providing that employee's statement is party admission only where statement was made "on a matter within the scope" of employment relationship). Sparrow fails to show any evidence that Flowers and Caughron's statements to her were in the course of their employment. *See Thomas v. Atmos v. Energy Corp.*, 223 Fed. App'x 369, 374 (5th Cir. 2007) (unpub.) (affidavit of plaintiff's former coworker stating that plaintiff's supervisor had told coworker that supervisor had given plaintiff a negative job reference was inadmissible hearsay where plaintiff failed to show that statement was made in course of coworkers employment); *see also Broadcast Music, Inc. v. Tex Border Mgmt, Inc.*, No. 3:10-CV-2524-BH, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012) ("The proponent of hearsay bears the burden of demonstrating that an exception to the hearsay rule applies."). Neither officer had any work rationale for contacting Sparrow – at the time a former employee – to talk about the circumstances regarding her termination. Nothing in the record even indicates that the officers had hiring or firing input whatsoever. And even if the officers did have some input, there was no employment reason to call Sparrow because Baylor had already executed its decision to fire her.

The Court also finds that the statement is not admissible under the federal residual exception because it lacks indicia of trustworthiness. *See* FED. R. EVID. 807(2). In fact, Officers Flowers and Caughron were both deposed, and neither remembered Gomez's statement that Sparrow had a drug issue or a drug problem. Accordingly, Sparrow's

ORDER – PAGE 9

affidavit, even when supplemented by Sparrow's deposition testimony that she was told of Gomez's statement by Flowers and Caughron, is not competent summary judgment evidence because it is based on impermissible hearsay. Because this is the only evidence that Gomez ever said that Sparrow had a "drug issue" or a "drug problem," Sparrow offers no competent evidence that Gomez ever said these words. Accordingly, Baylor is entitled to summary judgment on Sparrow's defamation claim to the extent it arises out of Gomez's alleged statement that Sparrow had a drug problem or a drug issue.

*2. Gomez's Alleged Statement That Sparrow Failed a Drug Test Is Not Defamatory Because It Is True.* – The parties do not dispute that Sparrow initially failed a drug test. At the time Gomez made his alleged statement, August 4, 2011, it was true that Sparrow had failed a drug test. Accordingly, this statement is not defamatory because it is true. Accordingly, Baylor is entitled to summary judgment to the extent that Sparrow's defamation claim arises out Gomez's statement that Sparrow failed a drug test.

*3. The Filing of the F-5 Report Was Not Defamatory Because It Did Not Contain a False Statement.* – Texas law requires Baylor to fill out an F-5 Report upon the termination of one of its peace officers. TEX. OCC. CODE § 1701.452. On Sparrow's F-5 form, Baylor marked the box "general discharge." As noted, this designation meant that Sparrow was terminated for either performance-related reasons or a disciplinary action not involving allegations of criminal misconduct, insubordination, or untruthfulness. Ex. E-1, *in* App. Supp. Def.'s Mot. Summ. J. 63. But at the time that Baylor filled out this form, Sparrow was terminated for a disciplinary action – a failed drug test. Thus, when Baylor published this

ORDER – PAGE 10

statement, it was not defamatory because it was at least substantially true. As noted, the parties do not dispute that Sparrow originally failed the drug test. The statement also does not become false even if the result of the drug test was eventually changed to negative. The reason she was discharged was indisputably because of a disciplinary action relating to Baylor's drug policy. Even though the test result was changed, the reason for the termination remained the same: Sparrow's discharge was "related to a disciplinary investigation." This statement remains true even if Baylor acted without full information or even in light of conflicting information. Thus, this is no evidence that Baylor made a defamatory statement. Accordingly, Baylor is entitled to summary judgment to the extent that Sparrow's defamation claim arises out of the F-5 form.

## CONCLUSION

For the reasons stated above, the Court grants Baylor's motion for summary judgment.

Signed May 14, 2013.

_____
David C. Godbey
United States District Judge